535 A.2d 1163

**Patricia FISHER, Appellee,**

v.

**Alfred FISHER, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 3, 1987.

Filed Jan. 15, 1988.

88

Mark Momjian, Philadelphia, for appellant.

Wallace Walker, Philadelphia, for appellee.

Before CIRILLO, President Judge, and BROSKY and BECK, JJ.

BECK, Judge:

Appellant father appeals an order of the Court of Common Pleas of Philadelphia County, ordering both parent parties to share equally in the legal and physical custody of

their son, Justin. He alleges that the hearing judge abused his discretion by (1) reasoning that since neither parent met the burden of proving superiority, case law requires both parents to share equally in the legal and physical custody of their child; (2) failing to consider certain criteria in support of the father's contention that he be granted primary physical custody; and (3) failing to consider the impact that annually alternating school systems and schedules would have on the child. The father specifically alleges abuse of discretion in the award of physical custody and does not contest the award of shared legal custody.

Father and mother were married but separated at the time of Justin's birth in October 1977, and then reconciled and lived together from December 1979 until their final separation in October 1981. The mother had sole custody of Justin in St. Louis from his birth until age two when his parents reconciled. Justin then lived together with his parents in Philadelphia until their separation. From October 1981 until February 1983, he lived in Philadelphia. During this period, he lived with his mother except for one to two months with his father. As of February 1983, he continued to live with his mother in St. Louis, and attended kindergarten there. From June 1983 until July 1987, Justin lived with his father in Philadelphia and attended school in Philadelphia. He spent the summers of 1984 and 1985 with his mother in St. Louis.

In July 1986, after father refused to send Justin to her for the coming school year, mother filed a petition for confirmation of custody. The hearing judge found that both parties are loving, caring parents, interested in selflessly promoting Justin's best interests; both would provide suitable housing and educational arrangements for Justin, and both offered Justin environments with equal advantages. The judge then ordered that shared legal and physical custody of Justin be alternated on a yearly basis, thus giving custody for the current 1987–1988 year to the mother.

■ Our scope of review in child custody cases is broad but we may only interfere with the decisions of the hearing judge where there has been a gross abuse of discretion. *Lombardo v. Lombardo*, 515 Pa. 139, 527 A.2d 525 (1987). We are empowered to determine whether the hearing court's factual findings are supported by competent evidence and whether the court's conclusions are reasonable in light of its factual findings. *Id.* Moreover, it is axiomatic that in any child custody case, the paramount consideration is the best interest and welfare of the child. All other considerations are deemed subordinate to the child's physical, intellectual, moral and spiritual well-being. *Michael T.L. v. Marilyn J.L.*, 363 Pa.Super. 42, 525 A.2d 414 (1987); *Beers v. Beers*, 342 Pa.Super. 465, 493 A.2d 116 (1985).

Although the factual findings which the hearing judge did make are supported by competent evidence, we find the hearing judge's conclusion, that physical custody be equally shared by means of annual shifts in physical custody, is unreasonable in light of the factual findings. The hearing judge's conclusion represents a gross abuse of discretion in two respects. It is based on an erroneous conclusion of law, and it is not based on a finding of Justin's best interests. Accordingly, we vacate the portion of the custody order concerning physical custody.

■ At the outset, we note that there is no previous custody order. Prior to the existence of a custody order, the parent parties stand on an equal footing and the only burden carried by either of them is to establish what is in the best interest of the child. *Michael T.L. v. Marilyn J.L.*[1]

■ Appellant first argues that the hearing judge abused his discretion by reaching an erroneous conclusion of law. We agree. In the instant case, the hearing judge reasoned

1. When the parties divorced in 1984, they entered into a property settlement agreement which incorporated a letter of understanding about custody of Justin. According to the letter of understanding, the mother was to have custody of Justin as of the 1987 school year until the summer before his entry into high school when Justin's preference would determine his future custody. The agreement and letter of understanding were not incorporated in any court order.

that because he found the relative merits of the parents to be equal, he was mandated by *Murphey v. Hatala,* 350 Pa.Super. 433, 504 A.2d 917 (1986) to order equally shared legal and physical custody. *Murphey* articulates the proposition that the hearing judge must award custody to the party who has proven his superiority by a preponderance of the evidence. Also, *Murphey* holds that shared physical and legal custody is appropriate in that case because it was in the child's best interests, where, among many factors, both parents lived in geographical proximity to each other so that despite bi-weekly shifts of physical custody, the child would go to the same school. Although *Murphey* favors shared custody where the relative merits of both parents are equal, "[s]hared custody need not encompass shared 'physical' custody; it need constitute merely shared 'legal' custody." *In re Wesley, J.K.,* 299 Pa.Super. 504, 512 n. 8, 445 A.2d 1243, 1247 n. 8 (1982). Moreover, the factors in *Murphey* are not present in the instant case. Therefore the hearing judge erred in basing his conclusion on *Murphey.*

We also hold that the hearing judge abused his discretion by making no finding as to Justin's best interests. An award of shared physical custody is only proper when it is in the best interests of the child. 23 Pa.Cons.Stat.Ann. § 5304 (Purdon supp. 1987).

Appellant then asserts two contentions which both affect the determination of Justin's best interests. The father first argues that the hearing judge abused his discretion by failing to consider criteria in support of the father's contention that he be granted primary physical custody of Justin. The court disregarded the father's status as primary caretaker and nurturing parent since June 1983. Where natural parents are both fit, the hearing judge must give positive consideration to the parent who has been the primary caretaker. *Commonwealth ex rel. Jordan v. Jordan,* 302 Pa.Super. 421, 448 A.2d 1113 (1983). The court also failed to take into account the effect of a change in status quo and evidence that Justin has been thriving in a stable environ-

ment while in Philadelphia with his father since June 1983. Courts have long recognized the importance of a continuing and stable custodial relationship with a parent which satisfactorily serves the child's needs. *Harner v. Harner,* 330 Pa.Super. 343, 479 A.2d 583 (1984), *see Gerber v. Gerber,* 337 Pa.Super. 580, 487 A.2d 413 (1985). These criteria favor a finding that it is in Justin's best interest that the father in Philadelphia should have physical custody during the school terms.

One of the criteria which the father argues that the judge failed to consider is Justin's preference. The hearing judge makes no reference to Justin's preference although he did conduct an in camera interview in the presence of counsel for both parents. We note that father also argues that the judge also abused his discretion by not permitting the transcript of Justin's testimony to be reproduced. This argument is meritless because the transcript constitutes part of the original record and is available for our review. When a hearing judge interviews a child in a custody case, the testimony must be transcribed and made a part of the record. *Gerald G., Jr. v. Theresa G.,* 284 Pa.Super. 498, 426 A.2d 157 (1981). The record shows that Justin would like to be with both his parents and does not indicate a clear preference for either parent. Although the opinion does not refer to Justin's testimony, it is clear that the judge considered it and did not abuse his discretion in this regard.

Father raises as a separate argument that the hearing judge abused his discretion by failing to consider the impact that different school systems and schedules would have on Justin if he attends school on an annually alternating basis between Philadelphia and St. Louis. This contention is an expansion of father's argument favoring Justin's need for stability. Our Court has repeatedly recognized that attending school in the same school system is generally in the best interests of the child, because alternating schools result in psychological and educational problems posed by different schools. *E.g. Smith v. Smith,* 337 Pa.Super. 9, 486 A.2d 453 (1984), *Ellingsen v. Magsamen,* 337 Pa.Super. 14, 486

A.2d 456 (1984). A child knowing that he will alternate schools will be less likely to establish strong friendships with other children, to participate in school activities and sports, and to gain a meaningful and useful education.

Although neither the initial court opinion or supplemental opinion make any finding as to Justin's best interests, the record in the instant case clearly discloses Justin's best interests. Moreover, the record reveals the parties' opinion about one aspect of Justin's best interests. The father's uncontradicted testimony establishes that both parents wished to provide Justin with some stability and that they "obviously could not move him back and forth every year." N.T. Oct. 20, 1986 at 74. In order to maintain the status quo and provide stability and continuity in the life of this young school-aged child, we hold that Justin's best interests will be served by returning him to the primary physical custody of his father. The mother, who is also a loving and fit parent, should be allowed partial physical custody of Justin for the maximum amount of non-school days feasible.[2]

The child is presently in school in St. Louis. The court's order upon remand should permit the child to remain in school in St. Louis until there is a natural break in the school term, such as the end of the fall semester.

Order affirmed as to shared legal custody. Order reversed as to shared physical custody, and case remanded for proceedings, including establishment of a custody schedule consistent with this opinion. Jurisdiction relinquished.

BROSKY, J., files concurring opinion.

BROSKY, Judge, concurring:

I concur in the result reached by the majority yet I feel compelled to write separately on the issue of our scope of review. There appears to be confusion among the cases in this regard. In custody matters we are supposedly granted

2. At oral argument the father through his attorney volunteered to pay the child's airfare and other expenses so that Justin could visit certain weekends with his mother in St. Louis.

review of "the broadest type" yet it has also been said that we cannot interfere with the custody decision of the trial court absent a gross abuse of discretion. In fact, the majority states this at p. 1165 of its opinion. To me the two statements seem contradictory and mutually exclusive of one another. However, I believe a workable statement of our scope of review can be gleaned from the relevant Supreme Court opinions on this matter.

A very astute articulation of the scope of review in custody cases was made by now Chief Justice Nix in *Commonwealth ex rel. Spriggs v. Carson*, 470 Pa. 290, 294–295, 368 A.2d 635, 637 (1977); there it was said:

It is now beyond dispute that the sole issue to be decided in a custody proceeding between contending parents is the best interest of the child ... In order to insure such a focus, our law has long recognized that the scope of review of an appellate court reviewing a custody matter is of the broadest type. Thus, an appellate court is not bound by deductions and inferences made by a trial court from the facts found, ... nor must a reviewing court accept a finding which has no competent evidence to support it. (citations omitted).

This statement appears to recognize a considerably broader scope of review in custody cases than is commonly enjoyed by appellate courts with respect to other matters. However, even this statement does not condone or authorize appellate courts to usurp the traditional function of a hearing court which is to make factual findings based upon the presentation of evidence. This key function remains within the province of the hearing court. But in a custody case the hearing court is charged with a duty to do more than make factual findings. It is also charged with a duty to order an appropriate custody arrangement *in light of* the factual findings made. It is this aspect, the ordered custody arrangement, which was apparently meant to be subjected to broad appellate review. This intent can be gleaned from the above quoted passage from *Carson* when con-

sidered with the language, quoted by Chief Justice Nix, which appeared immediately after that passage in *Carson:*

> ... [T]his broader power of review was never intended to mean that an appellate court is free to nullify the fact-finding function of the hearing judge. It is a principle which runs through all our cases that the credibility of witnesses and the weight to be given to their testimony by reason of their character, intelligence, and knowledge of the subject can best be determined by the judge before whom they appear.

Consequently, it appears to me that *Carson* instructs appellate courts to accept the factual determinations of the hearing court, unless unsupported by the evidence or made contrary to the weight of the evidence, a situation tantamount to an abuse of discretion on the hearing court's part, but to scrutinize closely the hearing court's custody determination which was made in light of the factual findings. Undoubtedly, it was meant that deference be given to a hearing court's custody determination; and certainly with regard to matters of credibility of witnesses and resolution of factual matters and disputes, the hearing court is in a superior position to make such findings; but it also appears that custody matters were considered so important that an appellate court be given broad review rights to ensure that the child's best interest would be served by an appropriate custody arrangement.

This delineation, that the appellate court cannot substitute its own factual findings for those of the hearing court, or otherwise usurp the hearing court's role absent an abuse of discretion on the hearing court's part, while still possessing a broad scope of review of the custody determination, is further shown in *Commonwealth ex rel. Robinson v. Robinson,* 505 Pa. 226, 478 A.2d 800 (1984). There Justice Papadakos, writing for our Supreme Court, indicated, while once again quoting from *Carson,* supra, that the appellate court was to remain within the proper bounds of its review and base a decision "upon its own independent deductions and inferences *from the facts as found by the hearing*

*judge."* 478 A.2d at 806 (emphasis in original). The *Robinson* opinion went on to state:

> .... Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support the trial court's factual conclusions, but may not interfere with those conclusions *unless they are unreasonable in light of the trial court's factual findings ...* and, thus, represent a gross abuse of discretion, ...

478 A.2d at 806, (citations omitted).

This passage indicates that the abuse of discretion standard of review relates to our review of the trial court's *factual conclusions,* which we are bound by unless unsupported by or contrary to the evidence of record. However, this passage does not indicate that, absent a gross abuse of discretion, we are bound by the hearing court's *custody determination.* If this were the case, it would appear, there could be no appellate review of "the broadest type" as indicated in *Carson.*

The importance of this distinction is illustrated in cases such as the present one. The majority does not take exception to the factual findings or factual conclusions of the hearing court yet they conclude that the custody determination itself does not serve the child's best interests, because it calls for yearly shifts of residence, for schooling purposes, between St. Louis and Philadelphia. They contend, and I agree, that it is generally in the child's best interests to stay in the same school system.

However, I cannot agree that the ordered custody arrangement represents a gross abuse of discretion on the part of the hearing court. The hearing court was faced with a difficult decision between ordering the child to remain in one school system, which would require the child to remain in the physical custody of one parent for a great majority of the time, a situation exacerbated by the great distance between the mother's and father's residences; and, alternating physical custody of the child for a full school year between the parents on a year to year basis. Both arrangements would have advantages and disadvantages

but neither seems to me to be so lacking in consideration or potentially harmful to the child to be equivalent to a gross abuse of discretion. To so hold just depreciates the meaning of that statement. Yet, apparently both parents agree that the better custody arrangement is one which provides some "stability". To this extent I believe the majority's custody arrangement better serves the child's interests than the one ordered by the trial court. As I do not read the relevant caselaw to require us to find a gross abuse of discretion on the hearing court's part as to its custody determination prior to rejecting its custody order, I concur in the result reached by the majority.