550 A.2d 1341

**Sally O. MUMMA, now Sally O. Songster, Appellee,**

**v.**

**Robert M. MUMMA, II, Appellant.**

Superior Court of Pennsylvania.

Argued June 14, 1988.

Filed Nov. 29, 1988.

Reargument Denied Jan. 17, 1989.

Richard B. Wickersham, Harrisburg, for appellant.

Donald Byrne Hoyt, York, for appellee.

Before CIRILLO, President Judge, and WIEAND and DEL SOLE, JJ.

WIEAND, Judge:

Sally O. Songster, appellee, and Robert M. Mumma, II, appellant, are the parents of Robert Mumma, III, who was born May 12, 1982 and who is known by his parents as "Bo." The trial court awarded primary custody of Bo to his mother during the school year, with alternating weekends to be spent with his father. During the summer, however, Bo was to divide his weeks on an alternating basis between both parents. His father has appealed from the trial court's order. After careful review, we affirm.

The parties to this action were married in 1977 and separated in April, 1983. Pursuant to the terms of a property settlement agreement, the parents shared custody of their son, who moved from parent to parent on a weekly basis. On July 10, 1985, the appellant-father filed a petition asking the court to confirm joint custody. This was followed, on July 25, 1986, by the mother-appellee's petition for custody. Following a pre-hearing conference before a court-appointed master, a temporary order was entered awarding primary custody to the mother-appellee. Thereafter, the court held extensive hearings which produced the order from which the father appealed. He has raised two issues for appellate review as follows:

I. DOES THE COURT ORDER OF JULY 2, 1987 REPRESENT THE BEST INTERESTS OF THE CHILD BO IN THE DIVISION OF PARENTAL TIME BETWEEN THE MOTHER AND FATHER?

II. IS IT PROPER FOR COUNSEL FOR THE MOTHER TO SERVE IN SUCH CAPACITY, WHILE AT THE

SAME TIME HOLDING A POSITION AS PRE-HEAR-
ING OFFICER OR MASTER IN THE YORK COUNTY
COMMON PLEAS COURT, DOMESTIC RELATIONS
DIVISION.

 In an appeal of a child custody determination made
by a trial court, the paramount concern must be the best
interest of the child. In reviewing a custody order, we are
not bound by findings of fact made by the trial court which
are unsupported in the record, nor are we bound by the
court's inferences drawn from the facts. *Commonwealth
ex rel. Spriggs v. Carson*, 470 Pa. 290, 294–295, 368 A.2d
635, 637 (1977). However, on issues of credibility and
weight of the evidence, we defer to the findings of the trial
judge, who has had the opportunity to observe the proceed-
ings and the demeanor of the witnesses. *Id.*, 470 Pa. at
295, 368 A.2d at 637. Only where we find that the custody
order is "manifestly unreasonable as shown by the evidence
of record ..." will an appellate court interfere with the trial
court's determination. *Murphey v. Hatala*, 350 Pa.Super.
433, 439, 504 A.2d 917, 920 (1986), *appeal denied*, 516 Pa.
634, 533 A.2d 93 (1987), citing *Mielcuszny v. Rosol*, 317 Pa.
91, 176 A. 236 (1934); *Commonwealth ex rel. Berman v.
Berman*, 289 Pa.Super. 91, 432 A.2d 1066 (1981). There-
fore, unless the trial court's ruling represents a gross abuse
of discretion, we will not interfere with its order awarding
custody. *Commonwealth ex rel. Rainford v. Cirillo*, 222
Pa.Super. 591, 597–598, 296 A.2d 838, 841 (1972), quoted in
*Lombardo v. Lombardo*, 515 Pa. 139, 148, 527 A.2d 525, 529
(1987).

In support of his contention that the trial court abused its
discretion, appellant argues that (1) in the absence of a
showing of changed circumstances, the court should have
based its order on the shared custody agreement of the
parties; and (2) the court's order contravened the policy
against destroying the relationship between parent and
child. Appellee counters by arguing that (1) the prior,
shared custody agreement no longer represents Bo's best

interests because now he has started school, and (2) the lack of cooperation between the parties has destroyed the beneficial effects otherwise obtainable by a shared custody arrangement.

We reject appellant's argument that the trial court abused its discretion when it declined to follow the shared custody arrangement to which the parties had earlier agreed. The trial court was not bound by the parties' agreement with respect to Bo's custody. A contract pertaining to the custody of a minor child is always subject to being set aside in the best interest of the child. *Walker v. Walker*, 308 Pa.Super. 280, 283, 454 A.2d 130, 132 (1982). See: *Commonwealth ex rel. Children's Aid Society v. Gard*, 362 Pa. 85, 66 A.2d 300 (1949). See also: *Supko v. Monoskey*, 314 Pa.Super. 469, 461 A.2d 253 (1983). To set aside a private agreement regarding the custody of a child, it is not necessary that a court find a change of circumstances. Such an agreement, although entitled to be considered, must always give way where the best interests of the child suggest an alternate custody arrangement.

It is correct, as appellant argues, that the policy of the courts in this Commonwealth is to preserve and not interfere with the relationship between parent and child. See: *Commonwealth ex. rel Newcomer v. King*, 301 Pa.Super. 239, 447 A.2d 630 (1982); *Pamela J.K. v. Roger D.J.*, 277 Pa.Super. 579, 419 A.2d 1301 (1980). This policy, however, does not dictate that physical custody of the child be divided equally between parents. Other considerations are also important. In the instant case, the trial court found that both parents were fit to care for the child, that the living accommodations were adequate in both situations, and that the parties were both involved in new marriages which would be beneficial to the child. It found further, however, that the previous arrangement of transferring custody from one parent to the other on a weekly basis had

become unworkable because of the hostility and lack of cooperation between the parties. The court also found that the inability of the parties to cooperate in the shared custody arrangement had become detrimental to the child. As being illustrative of this fact, the court cited an incident in which the local police had been called to effect a custody exchange between the parties. Two psychologists testified that it would be in Bo's best interest during the school year to be in the primary custody of a single parent so that he would have the stability and predictability of a "home base" from which he could leave each morning and return each afternoon.[1] Thus, there was evidence which fully supported the trial court's determination that shared custody on an equal, rotating basis would not be in the best interest of the child.

In deciding that the appellee-mother should have primary custody, the trial court determined that although Bo had developed a close relationship with both parents, it had been his mother who had been the primary, nurturing parent and who had been most available to meet Bo's immediate physical needs. His father, on the other hand, because of more frequent absences from the home, had been less available to provide day to day care. Although both parents were fit custodians, the trial court concluded that Bo's mother, who was unemployed, would better be able to provide the daily, hands-on care which the child required. The trial court's consideration of the best interests of the child was careful and thorough, and we are unable to find therein any abuse of discretion that would warrant an appellate court's interference.

■ Appellant also objects to the fact that appellee was represented in these proceedings by an attorney who is a court-appointed, pre-hearing custody officer and who, in other cases, has acted in this quasi-judicial role. Although

1. A psychologist called by appellant recommended a continuation of shared custody.

conceding that there was no actual impropriety, appellant suggests that counsel's representation of appellee created an appearance of impropriety.

This is a troubling issue. Although in some counties of Pennsylvania the practice of family law by a domestic relations hearing officer is prohibited by local rule, this practice is not uniformly followed in all counties. In York County, we are advised, the practice is to allow pre-hearing custody officers to continue to handle custody actions.

The Civil Procedural Rules Committee has submitted to the Supreme Court of Pennsylvania a proposed rule which would prohibit a hearing officer who is a lawyer from practicing family law. Specifically, proposed R.C.P. 1910.-11(a)(2) would provide:

(2) A hearing officer who is a lawyer shall not practice family law. For the purpose of this rule, family law includes the following matters: support; custody, partial custody or visitation of minor children; divorce or annulment of marriage; and protection from abuse.

17 Pa.Bull. 38, p. 3737 (September 19, 1987). This proposed rule, however, was not published until after hearings in this matter had been completed, and the Supreme Court has not, as of this writing, adopted the same. Thus, it cannot be said that appellee's counsel violated an established rule of court or practice which is uniformly followed in this Commonwealth.

The order in the instant case was not based upon or affected by the pre-hearing conference held before another court appointed officer. Instead, it was based upon evidence produced during four and one-half days of hearings before the trial court. The trial judge, moreover, has stated that his decision was made independently of any recommendation made by the pre-hearing officer. We conclude, therefore, that there is no basis in this case for requiring new hearings before the same or a different trial judge.

ORDER AFFIRMED.